I think we can call, we have one more case today. Case number 13-0837 Cooper v. Ray E. Robinson They look like they are here. Are they here? Oh, there's Mr. Scott. There they are. Good morning. Counsel who wishes to present, would you approach the podium and identify yourselves for us please? Your Honor, Kristen Muller from the State Appellate Superior's Office on behalf of Ray E. Robinson. Brian Levitsky on behalf of the people. All right. Very well. Welcome. And we'll start out with 15 minutes aside and the appellant may reserve time for rebuttal if you wish. And you may be seated and the appellant may proceed. Before you start let me ask you a question. It appears in the record on this case that this defendant is a serial burglar. He keeps burglarizing, gets out of prison, he burglarizes again. Do you want to break the hearing? Yes, Your Honor. How is that going to help? Well, in this case there were a couple of witnesses that weren't interviewed at all. And one of the witnesses in particular, someone named Wanda, would have potentially corroborated his defense. Okay. Speak. This case involves the implausible testimony of a state star witness, Mr. Witherspoon. From the evidence we know that something happened on the day in question, but we would know more if Robinson's trial counsel had interviewed witnesses who could potentially corroborate his client's defense. Robinson raised several issues on appeal. I plan to focus on issue two, but I'm happy to answer any questions on the remaining issues. When Robinson filed a pro se post-trial motion raising ineffective assistance, the trial judge didn't conduct a proper preliminary inquiry by holding the pro se allegations to an undue burden and holding an adversarial proceeding. All pro se defendants need to demonstrate under Krinkle and Moore is possible neglect. And that was demonstrated here where the trial counsel admitted he didn't even try to interview Wanda or the doctor. The law is that you cannot make a strategic decision if you don't know what the testimony will be if you don't interview a witness. Counsel admitted at the preliminary inquiry to the trial judge, we never even tried to find Wanda. He said he didn't know where to find her just because he didn't know her date of birth and her address. That's inaccurate. He knew from Robinson that Wanda frequented the restaurant where he worked Alice's Barbecue, 65 East Fort Worth Street. He knew she was 5'5", 160 pounds, about the same complexion as Robinson, and good looking. He also knew that she was moving from this apartment on 46th Street to an apartment straight up the block on 44th Street. But yet he didn't even try to find her. He also didn't interview the doctor who treated Robinson's head wounds at the hospital after this offense. He even admitted that he had trouble reading the medical records. And he didn't know what else the doctor would add, of course, because he didn't interview him. This decision not to interview can't be strategic. Robinson also alleged that his attorney failed to call the investigator, the public defender he used before he hired a private attorney, and failed to investigate the crime scene. All of these claims demonstrated possible neglect under Krinkle and Moore. Last question. So the evidence is that he's in the apartment, and that he's taking the flat screen TV, and the fact that he intended to take it away, right? But his defense is that he believed that it was Wanda's apartment, and that Wanda was going to come in and testify that she allowed him to enter the apartment with authority. Right. It was his belief that he was helping Wanda, someone he knew from the restaurant where he worked, move some of her belongings to a new apartment, and that the TV belonged to her. He also believed that there was some kind of relationship between Mr. Witherspoon and Wanda that had ended. What was the basis of that belief? Robinson testified about witnessing the argument between the two of them. It seemed to be between two people that might have been involved, personally involved. In addition to possible neglect being demonstrated, there was also problems with his preliminary inquiry, where the trial judge held these claims to an undue burden and invited the prosecutor to argue against the pro se allegations. Law requires that the trial judge evaluate the factual basis of these claims at a mutual non-adversarial proceeding, where it is critical that the state's participation, if any, be de minimis. Here, the prosecutor relied upon facts not presented at trial and even cited case law to advocate against Robinson. She argued that all of his allegations fly in the face of everything done at trial. She specifically addressed his pro se claim about failing to file a motion to cross or suppress. She specifically addressed his claim about the public defender investigator's report. She cited two cases, People v. Walker and People v. Jocko. She argued that there was no need to call the felony review prosecutor. And she also argued that the facts in Jocko were the same as the facts here, is exactly what occurred here. This is not mutual, this is adversarial. Under the Supreme Court's holding in People v. Jolly and the Second District's holding in People v. Fields are directly on point in that in those cases the prosecutor was also invited to respond. Especially in Fields, the prosecutor argued specifically against each of the defendant's claims. And Jolly relied on Fields and held that this is error and it had to be remanded for a new preliminary inquiry before a different judge. The trial court's ruling did not address possible neglect. She found that counsel was extremely defective. She ruled that counsel hit the points he should have. She found he couldn't find Wanda because she was a needle in a haystack. And she found that Wanda and the doctor's testimony wouldn't affect the outcome of trial. After concluding that his motion completely lacks merit, she denied it. As Jolly made clear, the trial judge here should have been evaluated the factual basis of these pro se claims for possible neglect at a neutral, non-adversarial proceeding. Certainly the state should never be permitted to take an adversarial role against a pro se defendant at a preliminary criminal inquiry. This cannot be harmless error. If this court does not vacate for lack of proof beyond a reasonable doubt, then under Jolly and Fields, this court should remand with instructions to appoint new counsel to represent him because the claims show possible neglect. Or alternatively, at the very least, you should remand for a new preliminary inquiry. As both Jolly and Fields indicate, it should be before a new judge because of the lack of neutrality. If there's no other questions. But the reasonable doubt issue, that's a pretty high burden that you have to climb, isn't it? Yes. So what is that burden? Proof beyond a reasonable doubt? No, no, the burden, I'm sorry, I didn't phrase the question well. On review, the burden they have to show for us to decide that the case is not proven beyond a reasonable doubt, it's a very high burden, isn't it? Yes, Your Honor. Don't we have to view the evidence in the light most favorable of the state? Yes, Your Honor. That's our standard of review. Right. And do I speak to that? Sure. It still can't, even if it relies on one witness's testimony, it still can't rely on an unbelievable and unconvincing testimony. And here, Mr. Witherspoon's testimony, I believe, was unconvincing. He said he was the only person who had keys to get into this building, but there was no explanation for how Robinson and Wanda could have gotten into the main entrance of the building without having keys. There was no damage to that door. He contradicted himself on whether there were two or three offenders between his testimony at the preliminary hearing and at trial. His testimony on how the fight occurred was unconvincing. This was a 6'7 man who weighed 240 pounds, claiming that he wrestled for five to ten minutes with Robinson in a space maybe three by four, scattered with objects, and nothing was knocked over. They also allegedly, according to Witherspoon, wrestled through this door frame without knocking over this large trash can that was blocking half the doorway. His testimony about holding Robinson in a headlock on the stairwell, also unconvincing. Given his size and holding someone in a headlock, he contradicted himself on whether it was right arm or left arm, but if Robinson, who's this much smaller man, could even reach up to his face. Well, how about the fact that nobody ever saw a mysterious Wanda? Actually, Witherspoon testified about seeing a woman. He said that there was a woman he saw leaving his apartment who had his computer. Laptop. Laptop. And she had left. Yeah. So he corroborates the fact that there was a female present. But she wasn't there later. According to him, yeah, she left and then the fight happened with Witherspoon. The testimony about his wife's being upstairs with a migraine is completely unbelievable. Anyone with a migraine is going to sleep through all of the shouting, gunshots, him screaming to call 911 just because she took two over-the-counter pills. Completely unbelievable. Also, the fact that he said he hit Robinson one time on the top of the head, no matter where it was, hitting someone one time with a gun isn't going to cause three distinct head gashes that required staples. Robinson's story was more believable, but even if you don't accept his version of the facts, this just can't be proof beyond a reasonable doubt. It's just too unconvincing. It doesn't make sense. And I relied on several cases in the brief. Sorry, Your Honor. Oh. People v. Jakes talks about when the logistics don't make sense. In that case, the victim testified about being hit through a car window that was half rolled down with a bat, similar to the logistics of the fight here. It just doesn't make sense. There was a broom standing out behind that front door to the apartment. How did it not get knocked over if a 6'7 man is wrestling on the ground in a 3' space with my client? For all of these reasons, I believe the State didn't meet their burden. Thank you, Counsel. Thank you. Mr. Lubitsky, is that right? That's correct, Your Honor. So why are you a Special Assistant State Attorney? What's so special about you? I could go on, but I was formed as a Special Assistant State Attorney pursuant to a fellowship that I was currently in salon with the office. Very nice. Okay. Just curious. Go ahead. Before you start, I have one question. How do you get around people v. Jolly? I mean, how do we not send this back for a proper criminal case? What happened in people v. Jolly is we had a criminal inquiry that was very different from the criminal inquiry here. The trial court asked some questions of the defendant, but then the prosecutor called the trial counsel to testify, and it created a biased record. What happened, what Jolly decided was that we're going to have a record like that where the trial court could determine from a neutral position whether or not the defendant raised a culpable claim within effective assistance of counsel. That wasn't harmless error. Okay. Well, let me ask you this. Can you cite any case in which this court has found that during a grateful hearing the state's allowed to take an adversarial position at the end of the hearing? There isn't a case that says that people can take an adversarial position. Well, then they do that here. They just give answers to the judge every time a question is brought up. What happened here was the trial court went through the defendant's claims and one by one allowed him to completely talk about what he believes the claims were. It then went to ask the trial counsel to explain the facts and circumstances surrounding them and then ask the people if they had anything they wanted to say. And that's different from cases where it hasn't been harmless error where the defendant and then the people who participated, like what happened in the fields or like in Jolly. I mean, do you have any residential burglary cases that would show that somebody could have taken an adversarial position on a criminal case? With respect simply to an adversarial position, again, the— Well, but isn't that what happened here, didn't it, when the trial court ultimately turned to the state and said, you know, do you want to state your position on this, didn't the state then take the opportunity to refute the defendant's allegations? And isn't the gist of Jolly that the state should not be allowed to refute the defendant's pro se allegations? But Jolly and the policy underlying the rule in Jolly says is that if the state participates so much that they bias the record, it's not— Jolly specifically said—we just wrote on this. This panel just wrote on this in Fleming. Jolly specifically said that the state should not be allowed to refute the defendant's pro se claims. It would be unfair for the state to have that opportunity at that point in the hearing. Isn't that what Jolly said? That's what Jolly said, and that's what this court said in the second Fleming opinion. But what we have here, if we look at the state's participation, there were conclusory arguments that the screwdriver in the statements of the stipulation wouldn't have been suppressed. The people cited to case law, the people read from the public defender's investigator's report, which was clarifying facts that were relevant to the trial counsel's position. Isn't that the whole point, though? Now you've got a state's attorney standing there in front of a judge citing case law, and on the opposite side of it is a pro se litigant who's basically telling the judge, hey, judge, I need a new lawyer, because this lawyer didn't help me. I need a new lawyer, and they're citing case law, and I don't know what they're talking about. Isn't that the whole point of this practical exercise as interpreted by Jolly? Sure, but I mean, if we look at the entire proceeding, the defendant made all of his claims. Counsel, in fact, isn't it true that the state actually made some arguments that the defense counsel didn't make, particularly as pertaining to the screwdriver? Sure. The trial counsel didn't address that when he was addressing the facts and circumstances surrounding what he did before trial. I think it's important when we look at this, though, to remember that the cases that say that the state participated too much talk about a biased record, a record that you can't determine whether or not the defendant really was able to fairly air his claims of ineffective assistance of counsel, but in mutual trial, in fact, the defendant was able to determine from that record whether or not it was necessary then to appoint a new counsel. You know, but that's not really what Jolly says. Jolly says that when you put the pro se person in an adversarial position, that that's a crop. Now, do you think Jolly was wrongfully decided? Jolly, it's a Supreme Court case. Right, right, and we have to follow the Supreme Court case, you see. Right. And you want to take a bite out of it, see. That's what you want to do. You want to take a bite out of it. And, you know, to send this case back and have just a crankle there, you know, that's not going to be a big deal. I think that what Jolly says, again, is that when… No, it says exactly, you know, it says exactly in the words, when you put a pro se person in an adversarial position, you need a new crankle hearing. That's what it says. You know, it's like saying that this pencil is an elephant. You could call it an elephant, but we all see it as a pencil, see. That's the problem. But then the opinion of Jolly continues that when the circuit court allows a state to bias the record against a pro se defendant, during the preliminary crankle inquiry, we have one-sided adversarial testing. We can't reveal in an objective and usual fashion whether the circuit court properly decided the defendant was entitled to be recounted. And so here the people did take a position. It was contrary to the defendant. And Jolly does say that the people shouldn't participate in an adversarial manner, but here the people's participation was absolutely de minimis. It was minimal. And if we look at the trial court's summation at the end, when it's denying defendant's motion, it never addresses the points that the people brought up. It doesn't address the fact that the words, I mean, leave a grass to suppress the screwdriver or the stipulation. It doesn't talk about the PD investigator's report. It doesn't refer back to the law that the people cited. And therefore, if the court should conclude that the participation is more than de minimis, harmless error should apply in this case. In cases like Jolly and in this court's opinion in Plumbing, the decision- Okay, so you do admit that this was error for the state to do what you call an adversarial test? I believe that in the record shows that this was, if it was participation, it was de minimis. But if the participation was more than de minimis, then harmless error should still apply in the alternative. All right. Talk to us about the reasonable doubt issue. Sure. So, as this court is aware, all the facts and all the recent witnesses are taken away most favorable to the people. The physical evidence in this case involved recent crime arts right outside Witherspoon and Johnson's door. It involved a bent screwdriver that's found in the scene. It involved a screwdriver that's found in the defendant's pocket after he's arrested. And also the defendant's fingerprints are on the television. This is a television that when Witherspoon comes back into his apartment, he sees the defendant hunched over about to grab. It was on the TV stand. Now it's on the floor. The defendant's about to pick it up. The trial court explicitly found that Witherspoon testified credibly. Witherspoon testified that he went outside to meet with some representatives. He heard a noise. He ran upstairs. He looks into his apartment after clarifying that there wasn't anything wrong on the third floor. He sees this woman coming out with his laptop. He sees the defendant inside hunched over his television. He knows that his wife is in the apartment. He's concerned about her. So he goes in. The defendant sees him, and they engage in this fight. What about this altercation where nothing gets disturbed or thrown about in the apartment, as defense counsel indicated? Right. I mean, the testimony was that they were scuffling. They were tussling. It seems like this is a very close quarters altercation. They were running around the apartment, and the trial court saw photographs that were taken after that showed, as defense counsel argued, that this was a closed area and that nothing was turned over. The trial court still reasonably credited Witherspoon, who had no motivation or biases in this case. And the testimony of Johnson corroborated what Witherspoon said. The defendant's story, on the other hand, was incredible and contradicting. He said that this woman who he knows as Wanda, although he's not sure that that's her name, begged her to help him while he was on his way to work. He had 45 minutes, so he was going to help her move a few blocks. He told an ASA in that stipulation that he had a screwdriver in his pocket because he was cleaning up the grill from the previous time he was working, and he still had the screwdriver. But he testified to trial that he never did. And so his story was contradicted. His trial court stated it didn't believe that he was simply acting as a good Samaritan and didn't provide common sense. Any reasonable trier of fact could have found that the elements of residential burglary and aggravated battery causing great bodily harm were met beyond a reasonable doubt. All right. Well, thank you, Counselor. Thank you. If there are no further questions, then I would ask the support, respectively, to refer to the defense conviction sentence and to revise this fine-sum fees order. Thank you. Thank you. Ms. Bueller? I would just briefly respond that Gail's is directly on point. It also provided an example of de minimis participation as offering concrete and easily verifiable facts. And it specifically said that even arguing that the claims weren't specific enough or arguing that this was just trial strategy is adversarial and, therefore, is improper and requires remand, which Jolly said cannot be carnal serif. If there's no further questions? Thank you. All right. To the parties, thank you for your presentations today and your briefing, your excellent briefing. And we will take the matter under advisement. Thank you all very much. Court is adjourned.